IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | Case No. 2:15-cr-00015 |
| WESLEY D. GROSS ) | |
| ) | |
| Defendant. ) | |

## SUPPLEMENTAL MOTION FOR COMPASSIONATE RELEASE

Mr. Gross requests a sentence reduction based on extraordinary and compelling reasons under 18 U.S.C. §3582(c)(1)(A), as recently modified by the First Step Act of 2018, Pub. L. No. 115-391, § 603, 132 Stat. 5194, 5239 (2018).

On October 18, 2016, Mr. Gross was sentenced to 96 months for his role in a non-violent drug conspiracy. Mr. Gross is housed at FCI Fort Dix in New Jersey. His final release date is November 30, 2023, and he has a halfway house eligibility date of May 30, 2023. *See* Sentence Monitoring Computation Data, attached as Exhibit 1. Mr. Gross has been incarcerated since 2016 and is currently 44-years-old. Mr. Gross has a history of asthma, COPD, hepatitis C, and spinal stenosis. *See* BOP medical records, attached as Exhibit 2. The extraordinary and compelling reasons set forth below are the combination of his health conditions and the coronavirus outbreak's rapidly spreading across the United States, including the facility where he is housed.

Mr. Gross respectfully asks the Court to reduce his sentence for two reasons:

1

***First***, as courts around the country have held, "these are not normal times" given the "the risk of exposure and death from the COVID-19 pandemic." *U.S. v. Gonzalez*, No. 18-cr-232-TOR, 2020 WL 1536155, at *1 (E.D. Wa. Mar. 31, 2020). Because of Mr. Gross's history of asthma, COPD, and hepatitis C, the coronavirus poses a greater risk to him than the general public. Releasing him would likely reduce the risk that he catches coronavirus.

***Second***, Mr. Gross poses no risk to the public. He would be required to undergo a lengthy period of supervised release (5 years), where he would be monitored by probation. The Court could also require Mr. Gross to serve a period of home confinement while on supervised release and to require him to attend drug treatment.

**Prison conditions prevent control of COVID-19.**

If the past is any indication, the Government will respond to this motion with several pages of the same material it submits in response to every compassionate release motion citing increased measures the Bureau of Prisons has implemented due to COVID-19 in an effort to assure the Court that the BOP has everything under control. The best evidence that the BOP cannot control the spread of COVID-19 is the current infection rate within the BOP. The BOP first began issuing medical and screening guidance in January and February 2020, instituted a nationwide lockdown on March 24th, instituting the enhanced procedures and protocols the Government will rely upon, but the BOP nonetheless has a current

2

infection rate of 33.87 infections per 1,000 people, vastly exceeding the infection rate in the United States, China, or Italy:

| Location | Cases | Population | Infections/ 1,000 People | Infection Rate as Percent of Population |
|---|---|---|---|---|
| BOP Imprisoned Population | 5,043[1] | 148,903[2] | 33.87 | 3.3868% |
| United States | 1,698,581[3] | 329,707,773[4] | 5.15 | 0.5152% |
| China | 84,104[5] | 1,394,015,977[6] | 0.06 | 0.0060% |
| Italy | 231,139[7] | 62,402,659[8] | 3.70 | 0.3704% |

FCI Fort Dix, where Mr. Gross is located, reports that 49 inmates and 5 staff have been infected, since the beginning of the outbreak.[9] On May 4, 2020, the

---

[1] Includes the number of BOP inmates who have tested positive for COVID-19, the number of BOP inmates who have recovered, and the number of BOP inmates who have died from COVID-19. Numbers obtained from www.bop.gov/coronavirus. There is good reason to believe that the numbers reported by the BOP understate the actual number of tested-positive cases. *Compare* M. Licon-Vitale, MCC Ward, and D. Edge, MDC Warden, *Response to EDNY Administrative Order 2020-14* (Apr. 7, 2020) *at* https://www.nyed.uscourts.gov/pub/bop/MDC_20200407_042057.pdf (3 positive inmates at MDC Brooklyn) *with COVID-19 Cases* Federal Bureau of Prisons (Apr. 7, 2020) *at* www.bop.gov/coronavirus (2 positive inmates at MDC Brooklyn).
[2] Includes the number of federal inmates in BOP-managed institutions, the number of federal inmates in community-based facilities, and the number of federal inmates who have died from COVID-19. Numbers obtained from www.bop.gov/coronavirus on a daily basis.
[3] Numbers obtained on 5/27/2020 at 8:01pm from https://coronavirus.jhu.edu/map.html
[4] Numbers obtained on 5/27/2020 at 8:03pm from https://www.census.gov/popclock/
[5] Numbers obtained on 5/27/2020 at 8:01pm from https://coronavirus.jhu.edu/map.html
[6] Numbers obtained on 5/27/2020 at 8:03pm from https://www.census.gov/popclock/
[7] Numbers obtained on 5/27/2020 at 8:01pm from https://coronavirus.jhu.edu/map.html
[8] Numbers obtained on 5/27/2020 at 8:03pm from https://www.census.gov/popclock/
[9] *See* https://www.bop.gov/coronavirus/

ACLU of New Jersey filed a federal class action habeas petition on behalf of medically vulnerable inmates confined at FCI Fort Dix.[10] According to the petition, there are currently almost 3,000 people at FCI Fort Dix, living in units of up to 300 people. On April 11 – just days after the first confined person at Fort Dix tested positive – Warden David Ortiz acknowledged in a notice: "Social distancing is not possible in this environment."[11]

In just three weeks, the number of reported positive tests at FCI Fort Dix has jumped from one to 40.[12] And it's likely that those numbers don't account for the true infection rate at the facility. Testing at BOP facilities has varied widely, and BOP acknowledges that some facilities are simply not testing for COVID-19.[13] That means that any facility that self-reports few, or zero cases may simply not be testing for the virus. *See United States v. Asaro*, 2020 WL 1899221, at *3 (E.D.N.Y. Apr. 17, 2020) (noting that, where there are no reported cases in a facility, "absent more information about how much testing the BOP is conducting, it is possible that undetected cases are present in the facility," and emphasizing that "[t]he virus is spreading" in the state where the federal prison is located).

---

[10] https://www.aclu-nj.org/news/2020/05/04/medically-vulnerable-people-federal-prison-file-class-action.
[11] *Id.*
[12] *Id.*
[13] Nicholas Chrastil, Louisiana Federal Prison No Longer Testing Symptomatic Inmates for Coronavirus Due To 'Sustained Transmission,' The Lens (Mar. 31, 2020), https://bit.ly/34Az7tf; see also Cary Aspinwall & Joseph Neff, These Prisons Are Doing Mass testing for COVID-19—And Finding Mass Infections, The Marshall Project (Apr. 24, 2020), https://www.themarshallproject.org/2020/04/24/theseprisons-are-doing-mass-testing-for-covid-19-and-finding-mass-infections ("Federal officials have largely given up testing at a half dozen prisons . . . .").

Until recently, FCI Fort Dix had only been testing those who presented severe symptoms, and little has been done to prevent asymptomatic cases from infecting others.[14] In another facility, the BOP has declared all inmates presumptively infected, stopped testing altogether, and is refusing to release infection estimates[15]. In another, the president of the correctional officers' union estimates inmate infection at 600% of BOP's public numbers[16]. One BOP employee told news reporters that "the Bureau is playing with these numbers . . . if they don't test 'em and they don't get confirmed they don't have to be reported."[17] As an example, only nineteen people out of the combined 2,400 people incarcerated at the Metropolitan Detention Center and Metropolitan Correctional Center in New York City had been tested as of April 23.[18] Senators Dick Durbin (D-IL) and Chuck

---

[14] https://www.aclu-nj.org/news/2020/05/04/medically-vulnerable-people-federal-prison-file-class-action.

[15] Nicholas Chrastil, *supra* note 13 ("But the spokesperson said that the BOP would not be releasing the number of presumed positive cases, making it impossible to know how many prisoners at the facility have actually contracted the virus.").

[16] Staff report, Elkton union president reports different COVID-19 stats than Federal Bureau of Prisons, WKBN News, Lisbon Ohio (Apr. 9, 2020), https://bit.ly/2VtyPAv. At FCI-Elkton, the BOP reported much lower numbers in its official count than those inside the prison. The BOP reported just 10 inmate infections, while the correctional union president said management inside the prison provided strikingly higher numbers: 67 positive or symptomatic and isolated, 44 hospitalized, 14 on ventilators, 12 staff infected, and three dead. *Id.*

[17] Chrastil, *supra* note 13; Walter Pavlo, Bureau of Prisons Underreporting COVID-19 Outbreaks in Prison, Forbes (Apr. 1, 2020), https://www.forbes.com/sites/walterpavlo/2020/04/01/bureau-of-prisonsunderreporting-outbreaks-in-prison/#719057947ba3 (quoting BOP spokesperson Sue Allison, who confirmed that the BOP's reporting "does not necessarily account for unconfirmed (non-tested) cases.").

[18] Andrew Cohen, Federal Prisons Told Inmates They Were Coming Home Because of COVID-19. Then They Took It Back, Slate (Apr. 28, 2020), https://slate.com/newsand-politics/2020/04/federal-prisons-reverse-covid-19-releases-william-barr.html.

Grassley (R-IA) have publicly questioned whether the BOP's numbers are accurate and whether the BOP is downplaying the threat of COVID-19 behind bars.[19]

Testing matters. Out of 2,700 tests conducted nationwide by the BOP as of April 2020, nearly 2,000 came back positive—roughly 70%.[20] If this figure is generalizable to the broader population in the BOP's care, all of those people are in grave danger. Moreover, because of how quickly COVID-19 spreads in a prison environment, facilities can quickly become deadly hotspots within a matter of days or weeks. For example, on April 3, 2020, the government opposed release in another case in this district, for an inmate at FCI–Butner, citing all of the usual BOP COVID-19 policies, such as screening, visitation lockdown, and social distancing, as being sufficient to prevent the spread of COVID-19 within Butner. *See United States v. Rumley*, No. 08-cr-5, Dkt. 185, at 4–7 (W.D. Va. Apr. 3, 2020). As of April 1, 2020, there were just 9 confirmed inmate cases of COVID-19 across the multiple Butner facilities. By April 14th, four incarcerated people had died and 45 were confirmed infected.[21] By May 4, six incarcerated people had died and 210 were confirmed infected. And the inmate in question in that case, Mr. Rumley, has now tested positive for COVID-19. *See Rumley*, No. 08-cr-5, Dkt. 202.

---

[19] Letter from Senators Durbin & Grassley to Inspector General Michael Horowitz (Apr. 21, 2020), https://www.durbin.senate.gov/imo/media/doc/DOJ%20IG%20COVID19%20BOP%20letter%20final%20signed.pdf.

[20] Michael Balsamo, Over 70% of tested inmates in federal prisons have COVID-19, Associated Press (Apr. 29, 2020), https://apnews.com/fb43e3ebc447355a4f71e3563dbdca4f.

[21] COVID-19 Coronavirus page, Federal Bureau of Prisons (archived copy, Apr. 14, 2020), https://web.archive.org/web/20200415200817/https://www.bop.gov/coronavirus/index.jsp.

FCI-Terminal Island is another example of this troubling phenomenon of rosy prognostications followed by a facility plunging into illness and death. As of April 14, 2020, that prison reported seven positive cases among its incarcerated population and two positive staff cases.[22] As of June 5, 2020, those numbers have exploded—689 prisoners have tested positive, and nine have died; seventeen staff members have tested positive as well.[23] Similar outbreaks have occurred at federal prisons in Elkton, Oakdale, and Fort Worth.[24] Even the Metropolitan Correctional Center in Chicago has not been immune—despite optimism in late March that a defendant at the MCC was safe because "Defendant has failed to cite to any evidence that Covid-19 is in the area within the facility within which he is currently housed."[25] As of May 4, 2020, 98 detainees at the MCC have tested

---

[22] *Id.*
[23] https://www.bop.gov/coronavirus/
[24] *See, e.g.*, Debbie Holmes, After Six COVID-19 Deaths, Judge Orders Elkton Prison to Transfer At-Risk Inmates, WOSU Radio (Apr. 22, 2020), https://radio.wosu.org/post/after-six-covid-19-deaths-judge-orders-elkton-prisontransfer-risk-inmates#stream/0 (discussing Elkton); Sadie Gurman, et al., Coronavirus Puts a Prison Under Siege, Wall Street Journal, (Apr. 6, 2020), https://www.wsj.com/articles/inside-oakdale-prison-our-sentences-have-turned-intodeath-sentences-11586191030 (discussing Oakdale); Scott Gordon, COVID-19 Cases Nearly Quadruple Inside Fort Worth Federal Medical Prison, NBC DFW (Apr. 23, 2020), https://www.nbcdfw.com/news/coronavirus/covid-19-cases-quadruple-to-132- at-fort-worth-federal-prison/2356912/ (discussing Fort Worth); Mitchell McCluskey et al., A North Carolina prison complex has 60 inmates and 23 staff members with coronavirus, CNN (Apr. 12, 2020), cnn.com/2020/04/12/us/butner-prisoncoronavirus-cases/index.html. Just last Friday, an outbreak of COVID-19 cases at the Federal Medical Center in Lexington, Kentucky "led to a sharp increase" in the area's COVID-19 cases, "when the city had settled into a period of relatively few new cases." Daniel Desrochers, Outbreak of COVID-19 reported at Federal Medical Center in Lexington: 33 inmates positive, Lexington Herald-Leader (May 1, 2020), https://www.kentucky.com/news/coronavirus/article242449731.html.
[25] *United States v. Price*, 18-CR-597, Dkt. 70 (Mar. 23, 2020) (Kendall, J.) (denying defendant's motion for pretrial release).

7

positive, along with 21 staff members.[26] This Court should not put its faith in the BOP's action plan, or be assured that there are not greater numbers of cases at FCI Fort Dix. As the Washington Post recently noted: "In early March, after numerous warning[s] from public health officials about the virus in jails and prisons, federal prosecutors were arguing in court filings that prisoners were more protected from covid-19 inside a prison than out. A few weeks later, the Federal Bureau of Prisons put out a statement boasting that only 10 inmates had tested positive. But that's because the agency wasn't testing."[27] Without widespread testing, the BOP can do little more than screen for symptomatic coronavirus carriers, mask and isolate any they find, and bar visitors.[28]

Moreover, the BOP has failed to consistently follow its own "Action Plan." Staff who should be quarantined after exposure are not.[29] Prisons are failing to stock basic essentials like soap.[30] The situation is so dire that a union representing 30,000 BOP employees has filed an OSHA complaint because "staff who were screened and ordered home" based on the screening tool shown above were "ordered

---

[26] COVID-19 Coronavirus page, Federal Bureau of Prisons (May 4, 2020), https://www.bop.gov/coronavirus/index.jsp.
[27] Radley Balko, Stopping covid-19 behind bars was an achievable moral imperative. We failed., Washington Post (May 1, 2020), https://www.washingtonpost.com/opinions/2020/05/01/stopping-covid-19-behindbars-was-an-achievable-moral-imperative-we-failed/.
[28] See Bureau of Prisons, BOP Implementing Modified Operations, https://bit.ly/2XzmsFt.
[29] Joseph Neff & Keri Blakinger, Federal Prisons Agency "Put Staff in Harm's Way" of Coronavirus, The Marshall Project (Apr. 3, 2020), https://bit.ly/2VkWuTC.
[30] See Letter from Jerrold Nadler, Chair, House Judiciary Comm., to William Barr, Att. Gen., at 1 (Apr. 10, 2020) ("Reports from inside the Oakdale facility indicate that there is a continuing lack of availability of personal hygiene products and that general sanitation is lacking.") (citing Sadie Gurman et al., Coronavirus Puts Prison Under Siege, Wall Street Journal (Apr. 6, 2020), https://on.wsj.com/3a4TD6K).

back to work within 48 hours."[31] This undermines the government's assurances that BOP professionals are in the best position to balance the concerns over the pandemic crisis and the impacts on society if an individual offender is released.

**Mr. Gross's plan once he's released.**

After he's released, Mr. Gross plans to live with his mother, Joyce Gross, at her home in Coeburn, Virginia. Ms. Gross is 71-years-old and a retired school teacher, after teaching for 39 years. She lives alone and could use the help around the house that Mr. Gross can provide.

## DISCUSSION

The Court can reduce Mr. Gross's sentence if he meets two criteria: (1) "extraordinary and compelling reasons warrant" reduction; and (2) the reduction is consistent with Sentencing Commission "policy statements" found in U.S.S.G. § 1B1.13. *See* U.S.S.G. § 3582(c)(1)(A). The Commission set forth three specific categories qualifying as extraordinary and compelling: terminal medical conditions, medical debilitation, and family circumstances. U.S.S.G. § 1B.13 cmt.1(A)–(C). But recognizing these categories might not encompass the wide range of compelling reasons, the Commission added a catch-all—"other reasons"—which may act "in combination" with the prior categories or might be wholly independent. *See* U.S.S.G. § 1B1.13 cmt.1(D).

---

[31] Council of Prison Workers 33, Imminent Danger Report, at 3 (Mar. 31, 2020), https://www.afge.org/globalassets/documents/generalreports/coronavirus/4/osha-7- form-national-complaint.pdf; see also Lia Russell, Union warns of coronavirus exposure in federal prisons, VA facilities (Apr. 7, 2020), https://bit.ly/3a5r3C9.

9

A court may grant a sentence reduction either by motion of the Director of the Bureau of Prisons or after "the lapse of 30 days from receipt of such a request . . . ." 18 U.S.C. § 3582(c)(1)(A).

Mr. Gross has informed counsel that he filed a request for compassionate release with the Warden on April 17, 2020 and never heard back. Thus, 30 days have lapsed since Mr. Gross's request was made and this matter is now ripe for the Court's consideration.

Mr. Gross's health ailments in combination with the risk of contracting the coronavirus constitute the extraordinary and compelling reasons that warrant release. As noted above, Mr. Gross suffers from, among other things, asthma, COPD, and hepatitis C. Courts around the country have identified each one of those conditions as being a basis that justifies release.[32]

---

[32] **Asthma**: *See United States v. Hunt*, 2:18-cr-20037-DPH-DRG, 2020 WL 2395222 (E.D. Mich. May 12, 2020); *United States v. Simpson*, 3:11-cr-00832-SI-3, 2020 WL 2323055 (N.D. Cal. May 11, 2020); *United States v. Amarrah*, 5:17-cr-20464-JEL-EAS-1, 2020 WL 2220008 (E.D. Mich. May 7, 2020); United States v. Echevarria, 3:17-cr-00044-MPS-1, 2020 WL 2113604 (May 4, 2020); *United States v. Ardila*, 3:03-cr-00264-SRU-1, 2020 WL 2097736 (D. Conn. May 1, 2020); *United States v. Brown*, 4:05-cr-00227-RP-CFB-1, 2020 WL 2091802 (S.D. Iowa Apr. 29, 2020); *United States v. Bertrand*, 3:00-cr-00012-LC-1, 2020 WL 2179387 (N.D. Fla. Apr. 29, 2020); *United States v. Handy*, PJM 04-0559, 2020 WL 2041666 (D. Md. Apr. 28, 2020); *United States v. Harper*, 7:18-cr-00025-EKD-JCH-1, 2020 WL 2046381 (W.D. Va. Apr. 28, 2020).
**COPD**: *United States v. Howard*, 4:15-cr-00018-BR-2, 2020 WL 2200855 (E.D. N.C. May 6, 2020); United States v. Harper, 7:18-cr-00025-EKD-JCH-1, 2020 WL 2046381 (W.D. Va. Apr. 28, 2020); United States v. Dillard, 1:15-cr-170-SAB, Dkt. No. 71 (D. Idaho Apr. 27, 2020); United States v. Coker, 3:14-cr-00085-RLJ-DCP-20, 2020 WL 1877800 (E.D. Tenn. Apr. 15, 2020); United States v. Miller, 2:16-cr-20222-AJT-RSW-1, 2020 WL 1814084 (E.D. Mich. Apr. 9, 2020); United States v. McCarthy, 3:17-cr-00230-JCH-1, 2020 WL 1698732 (D. Conn. Apr. 8, 2020); United States v. Gonzalez, 2:18-cr-00232-TOR-15, 2020 WL 1536155 (E.D. Wash. Mar. 31, 2020).
**Hepatitis C**: *United States v. Etzel*, 6:17-CR-00001-AA, 2020 WL 2096423 (D. Or. May 1, 2020); United States v. Hammond, 1:02-cr-00294-BAH-1, 2020 WL 1891980, at *8 (D. D.C. Apr. 16, 2020) (granting compassionate release to a defendant with the "serious medical

The §3553 factors favor release. Mr. Gross has already served a substantial amount of his prison sentence, and has maintained relatively good behavior in prison, with only a few minor infractions. *See* Inmate Discipline Data, attached as Exhibit 3. When Mr. Gross is released, he will be subject to five years of supervised release. The public is protected: Mr. Gross was convicted of a non-violent drug offense and when he's released, he'll be monitored by probation. The Court can also require him to serve a period of home confinement during his supervised release period and also require him to seek drug treatment. And in imposing a period of home confinement as part of that supervised release period, the Court furthers respect for the law, demonstrating the judicial system is not mechanical and uncaring of prisoners' plight.

## **CONCLUSION**

This Court should reduce Mr. Gross's sentence to time-served and order a period of home confinement to be served during his supervised release period.

---

condition," Hepatitis C); *United States v. Miller*, 2:16-cr-20222-AJT-RSW-1, 2020 WL 1814084 (E.D. Mich. Apr. 9, 2020) (granting compassionate release to a defendant with Hepatitis C, among other medical conditions); *United States v. McGraw*, 2:02-cr-00018-LJM-CMM, 2019 WL 2059488, at *1–2 (S.D. Ind. May 9, 2019) (granting compassionate release to 72 year-old inmate with limited mobility, diabetes, kidney disease, Hepatitis C, and other issues)

11

Dated: June 5, 2020.

>Respectfully submitted,
>
>WESLEY D. GROSS
>By Counsel
>
>s/John T. Stanford
>Assistant Federal Public Defender
>201 Abingdon Place
>Abingdon, VA 24211
>(276) 619-6089
>john_stanford@fd.org
>NC Bar No. 51664

**CERTIFICATE OF SERVICE**

I hereby certify that on the 5th day of June, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

>s/ John Stanford