IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff ) | |
| ) | Case No.: 2:15-cr-00015 |
| v. ) | |
| ) | |
| WESLEY DAVID GROSS, ) | |
| ) | |
| Defendant. ) | |

## REPLY IN SUPPORT OF COMPASSIONATE RELEASE

Wesley Gross, by counsel, filed a supplemental motion with this Court on June 5, 2020 requesting compassionate release pursuant to 18 U.S.C. §3582(c)(1)(A)(i) as amended by the First Step Act of 2018. ECF No. 1100. The government filed a response opposing compassionate release on June 11, 2020. ECF No. 1106. Mr. Gross provides this reply to address several points raised by the government in its response.

The government argues that Mr. Gross's medical conditions, namely his asthma and hepatitis C, do not constitute "extraordinary and compelling circumstances" that justify release. Gov't. resp. at 8. The government points out that the CDC reports that "moderate-to-severe" asthma is an exacerbating factor, but that Mr. Gross appears to have only a mild form of asthma. *Id*. at 8-9. The government also argues that Mr. Gross' hepititus C is not a risk factor because it seems to be well-controlled, and "[p]aradoxically, in addressing hepatitis and COVID-19, the CDC's website says it has 'no information' about whether those with

1

hepatitis B or C are at increased risked for getting or having severe COVID-19." *Id*. at 10.

Regarding asthma – in the cases cited in Mr. Gross' supplemental motion for compassionate release, in which courts around the country have recognized asthma as a risk factor, the courts in those cases found asthma to be a risk factor without differentiating between the levels of severity of the defendants' asthma. That same analysis should apply here, and Mr. Gross' history of asthma should be treated similarly.

Regarding hepatitis C – on the CDC webpage that says, "we have no information about whether people with hepatitis B or hepatitis C are at increased risk for getting COVID-19 or having severe COVID-19," that same CDC webpage goes onto address how people with hepatitis B or C can protect themselves from COVID-19. The webpage advises that "the best way to protect yourself from getting COVID-19 is to avoid exposure to the SARS-CoV-2 virus. People with liver disease should take the same preventive actions being taken by people with other underlying conditions to avoid getting sick with or spreading COVID-19."[1] Those "preventative actions" include staying at home if possible, washing hands often, keeping 6 feet away from other people, and cleaning and disinfecting frequently touched services.[2] Mr. Gross cannot do these things, because he is incarcerated.

---

[1] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/liver-disease.html

[2] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/what-you-can-do.html

Mr. Gross continues to remain at a particularized risk for COVID-19 while he is incarcerated at FCI Fort Dix. This Court is familiar with the government's general arguments concerning the BOP's response to COVID-19. Despite the measures being taken, the government has not presented any evidence that suggests FCI Fort Dix has engaged in widespread testing of the inmate population. What is clear is that the facility has had, and continues to have, exposure to COVID-19, and that there may yet be many inmates or staff that contracted the virus and who are passing it through the institution despite having fewer confirmed cases compared to some of the other BOP facilities. FCI Fort Dix currently has 14 confirmed cases, with 28 inmates recovered and 5 staff members recovered.[3] Since the outset of the pandemic, the Bureau of Prisons has continued to struggle to meaningfully contain COVID-19, as shown through this graph based on the data made public on the BOP's website each day.[4]



---

[3] https://www.bop.gov/coronavirus/
[4] https://federaldefendersny.org/

Finally, regarding Mr. Gross' most recent disciplinary infraction while in BOP, involving refusing to take a drug/alcohol test, Mr. Gross recently reached out to counsel to address this matter. For years, Mr. Gross has had difficulty urinating due to spinal injuries. He reports that when asked to give the urine sample, he was given 2 hours and 15 mins and 8 ounces of water, but he was unable to provide a sample in that time period, leading to a violation. Mr. Gross contends that he did not intentionally refuse to give a urine sample. Mr. Gross' other two infractions (possession of alcohol, and smoking in an unauthorized area) are relatively minor. On balance, Mr. Gross' behavior while incarcerated should count in his favor.

For the reasons given here, as well as in his *pro se* motion and supplemental motion, Mr. Gross requests that this Court grant him compassionate release. He will be able to return home to live with his mother in Coeburn, Virginia, and he will be subject to five years of supervised release, as well as any other conditions the Court chooses to impose.

Respectfully Submitted,

WESLEY DAVID GROSS
By Counsel,

s/*John T. Stanford*
John T. Stanford
Assistant Federal Public Defender
201 Abingdon Place
Abingdon, VA 24211
(276) 619-6089
john_stanford@fd.org
NC Bar No. 51664

CERTIFICATE OF SERVICE

I hereby certify that on June 18th, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification to the Assistant United States Attorney.

s/*John T. Stanford*