# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
### BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | Case No. 2:15-CR-15 |
| | ) | |
| **WESLEY DAVID GROSS** | ) | |

## UNITED STATES' OPPOSITION TO
## DEFENDANT'S SECOND MOTION FOR RELEASE

The United States opposes Wesley David Gross's (Gross) second request for compassionate release. The Court previously denied Gross's initial motion. It concluded that, notwithstanding his medical conditions and the existence of the COVID-19 pandemic, Gross should not be released under the § 3553(a) factors:

> The facts supporting [Gross's] conviction are serious in nature. Gross was involved in a substantial bath salts distribution network, in which he was a leader of the conspiracy and he coordinated with foreign suppliers to import the drug into Southwest Virginia. His Presentence Investigation Report found that he was accountable for the importation of approximately 52 kilograms of bath salts throughout 2013 and at least half a kilogram in January 2014. Gross then distributed these drugs to his coconspirators to sell. He has demonstrated an inability to comply with requirements, including committing numerous infractions while incarcerated. Ultimately, Gross has shown a consistent refusal to follow the rules, and his noncompliance may continue if he were to be released at this stage. Considering these facts and the § 3553(a) factors, including the need for deterrence and to protect the public, I find that Gross is not qualified for such extraordinary relief.

*United States v. Gross*, No. 2:15CR00015-011, 2020 WL 3785998, at *2 (W.D. Va. July 7, 2020). The same considerations remain and are not outweighed by the more recent submissions Gross has made. Release should again be denied.

1

## BACKGROUND

**1.   Gross's Criminal Proceedings and Prior Medical History**

Gross's prior criminal proceedings were summarized by the Court's July 2020 opinion.  The Government elaborated on his conduct in further detail in its original opposition brief (and discussed his prior medical history), which is incorporated here by reference.  (Dkt. 1106 at 1–3, 8–11).

**2.   The BOP's COVID-19 Response, Inmate Vaccinations, and FCI Ft. Dix**

As the Court is aware, BOP has taken aggressive steps to protect inmates' health and limit the spread of COVID-19 in its facilities. BOP COVID-19 Action Plan (March 13, 2020), www.bop.gov/resources/news/20200313_covid-19.jsp; BOP COVID-19 Coronavirus, www.bop.gov/coronavirus/index.jsp (updated regularly).  BOP modified operations by regularly screening inmates and staff, suspending social visits and tours, limiting in-person legal visits, limiting inmate movement, and maximizing social distancing.  https://www.bop.gov/coronavirus/covid19_status.jsp.  As BOP progresses in its Action Plan, it has restored some aspects of normal operations.

BOP is devoting all available resources to transfer inmates to home confinement in appropriate circumstances when those inmates are particularly vulnerable to adverse outcomes from COVID-19 under the Centers for Disease Control and Prevention risk factors.[1]

---

[1]   Mem. from Attorney General to Director of BOP (Mar. 26, 2020), *available at* https://dojnet.doj.gov/usao/eousa/ole/tables/misc/aghome.pdf; Mem. from Attorney General to BOP Dir. (Apr. 3, 2020),  *available at* https://dojnet.doj.gov/usao/eousa/ole/tables/misc/agcovid2.pdf.

In determining which inmates would be appropriate candidates for home confinement, BOP must assess several discretionary factors:

- The age and vulnerability of the inmate to COVID-19, in accordance with the CDC guidelines;

- The security level of the facility currently holding the inmate, with priority given to inmates residing in low and minimum security facilities;

- The inmate's conduct in prison, with inmates who have engaged in violent or gang-related activity in prison or who have incurred a BOP violation within the last year not receiving priority treatment;

- The inmate's score under PATTERN, with inmates who have anything above a minimum score not receiving priority treatment;

- Whether the inmate has a demonstrated and verifiable re-entry plan that will prevent recidivism and maximize public safety, including verification the conditions under which the inmate would be confined upon release would present a lower risk of contracting COVID-19 than the inmate would face in his or her BOP facility;

- The inmate's crime of conviction, and assessment of the danger posed by the inmate to the community; some offenses, such as sex offenses, render an inmate ineligible for home detention.

Mem. from Attorney General to Director of BOP (Mar. 26, 2020) at 1-2, *available at* https://dojnet.doj.gov/usao/eousa/ole/tables/misc/aghome.pdf.   As of March 25, 2021, BOP has transferred 23,280 inmates to home confinement. https://www.bop.gov/coronavirus/index.jsp (last visited March 25, 2021).

BOP has begun administering vaccines to inmates.   Some information on BOP's vaccination efforts is available on bop.gov.   Based on available data accessed on March 25, 2021, BOP has administered 94,597 doses of the vaccine.   "Full Inoculation" data is listed for both staff and inmates. https://www.bop.gov/coronavirus/index.jsp# (visited Mar. 25, 2021); Ex. 1 (Screenshot

from 3/25/2021).   At FCI Ft. Dix, for example, 184 staff and 158 inmates have been fully inoculated as of the morning of March 25, 2021.

Finally, although Gross's submissions allege several COVID-19 infections at his facility, he appears to be mistaken, relying on outdated data, or both.   BOP's website indicates that, as of March 25, 2021, there are only 3 inmates and 42 staff positive at FCI Ft. Dix.  Ex. 1.  (A large number of inmates are listed as "recovered.")

### 3.   Gross's 2021 Submissions

From January 2021 to as recently as March 16, 2021, Gross made several *pro se* submissions.   The federal public defender's office was appointed and given an opportunity to make a supplemental submission, but declined. (Dkts. 1227, 1231).

In January 2021, Gross filed a *pro se* motion for release.   (Dkt. 1221).   It contended he had not received certain treatment for spinal stenosis and stated he currently was in quarantine due to contracting COVID-19, but Gross acknowledged having only "mild" symptoms.  (*Id*. at 3, 7).  He noted he had filed a request to the warden on November 29 (presumably 2020), and argued he was at increased risk if "re-infected" with COVID-19 because of prior respiratory issues.  (*Id*.).  (As the Government previously detailed, dkt. 1106 at 8–10, Gross's respiratory issues appear well-controlled and not severe.)  Gross also referenced his elderly mother (dkt. 1221 at 5), a point previously raised by the public defender's office in a supplement to his 2020 motion.  (Dkt. 1100 at 9).

In a February 1, 2021 filing, Gross reiterated his need for treatment of his spinal condition. (Dkt. 1224 at 1). He also referenced his participation in the RDAP program, projected late-2022 release date, and a 14-year old son. (*Id*. at 2).

In a February 9, 2021 filing, Gross again referenced his prior positive COVID-19 test and desire for treatment regarding his spine, and he claimed over 800 COVID-19 cases existed at FCI Ft. Dix. (Dkt. 1225 at 1).

In a March 2, 2021 filing, Gross again cited his desire to be with his family and his professed rehabilitation as grounds for release. (Dkt. 1230).

In a March 16, 2021 filing, Gross again cited infections at FCI Ft. Dix and the possibility of re-infection. (Dkt. 1232 at 1). He also cited an unspecified illness by his mother, for whom he wishes to care. (*Id*.).

To summarize the new primary issues Gross raises as grounds for release, they are:

- His fear of possible re-infection with COVID-19;

- COVID-19 infections generally at FCI Ft. Dix;

- His desire for better treatment of his spine condition;

- His desire to be with family.

These concerns, however, are not extraordinary and compelling, and do not outweigh the Court's earlier conclusion that the § 3553(a) disfavor release.

## ARGUMENT

The Court may not grant a compassionate release motion unless "the defendant has fully exhausted all administrative rights to appeal a failure of the

Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).  Here, Gross claims he submitted a request (the nature of which is unspecified) to the warden in November 2020.  As of the time of this filing and after inquiry to the BOP, the Government has not been able to locate a copy of the request Gross claims he made.  Thus, the Government preserves the argument that Gross as not properly exhausted.  In any event, the Court should make clear it has considered the merits of Gross's motion and deny it.

**1.    Gross Has Not Shown Extraordinary and Compelling Circumstances, and the § 3553 Factors Weigh Against a Sentencing Reduction.**

Section 3582(c)(1)(A), as amended by the First Step Act on December 21, 2018, provides, in part, that the "court may not modify a term of imprisonment once it has been imposed except that . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."

In general, Gross has the burden to show the "rare" and "extraordinary" circumstances meeting the test for compassionate release.  *See United States v. Brewington*, 2019 WL 3317972, at *2 (W.D. Va. July 24, 2019) (Jones, J.); *United States v. Willis*, 2019 WL 2403192, at *3 (D.N.M. June 7, 2019); *United States v. Gutierrez*, 2019 WL 1472320, at *2 (D.N.M. Apr. 3, 2019).  Although the Fourth Circuit recently held the policy statement found in U.S.S.G. § 1B1.13 does not apply to compassionate release motions brought by inmates under 18 U.S.C. § 3582(c)(1)(A)(i),

6

the policy statement remains "helpful guidance even when motions are filed by defendants." *United States v. McCoy*, 981 F.3d 271, 282 n.7 (4th Cir. 2020); *accord United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) (explaining that § 1B1.13 remains useful in framing a court's inquiry as to what constitutes "extraordinary and compelling reasons"). A "judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused. In this way the Commission's analysis can guide discretion without being conclusive." *Gunn*, 980 F.3d at 1180 (citing *Gall v. United States*, 552 U.S. 38, 49–50 (2007); *Kimbrough v. United States*, 552 U.S. 85 (2007)).[2]

### A. Gross's new concerns do not present extraordinary and compelling circumstances.

Gross's concerns about COVID-19 re-infection do not present extraordinary and compelling circumstances, especially given his personal situation. As an initial matter, the "fact that the BOP is now actively vaccinating inmates against COVID-19—including inmates at FCI [Ft. Dix]—only underscores the speculative nature of any concern about reinfection." *See United States v. Jenkins*, 2021 WL 665854, at *4 (S.D. Ind. Feb. 19, 2021).

---

[2]     For its part, the Sentencing Commission explained that the Court may grant release if "extraordinary and compelling circumstances" exist, "after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," and the Court determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" *and* "the reduction is consistent with [the] policy statement." U.S.S.G. § 1B1.13. In addition, the Commission further explained that certain serious medical conditions—including terminal conditions or conditions that diminish the ability of the inmate to provide self-care—may qualify as "extraordinary and compelling" conditions that would justify release. *See id.* at App. Note. 1.

Further, as Gross admits, he previously contracted the virus and experienced only mild symptoms; he therefore has some degree of natural immunity and to date is not shown to have severe risks if he happened to become re-infected.  And in addition to natural immunity, Gross is currently receiving the COVID-19 vaccine:  On March 22, 2021, he signed a consent form and received the first dose of the Pfizer vaccine.  Ex. 2 (submitted under seal).  Courts in this Circuit and elsewhere deny relief in such circumstances. "Because he has already contracted the virus and recovered without complication, and because he is in the process of being vaccinated, the Defendant cannot meet his burden of establishing that his COVID-19 risk is an extraordinary and compelling reason for his release." *United States v. Wakefield*, 2021 WL 640690, at *3 (W.D.N.C. Feb. 18, 2021); *see also United States v. McGill*, 2021 WL 662182, at *4–5 (D. Md. Feb. 19, 2021); *United States v. Beltran*, 2021 WL 398491, at *3 (S.D. Tex. Feb. 1, 2021) (relief is denied in light of administration of first dose of the Pfizer vaccine).

Additionally, as explained above, the BOP website shows only a handful of current infections at FCI Ft. Fix, while numerous inmates who were infected are recovered.  In sum, COVID-19 is not an extraordinary and compelling reason for release on the facts here.

Gross also seeks release based on his desire for additional and better treatment of spinal stenosis.  But again, that is not an extraordinary and compelling reason for release, and courts have denied release based on conditions far worse and more detrimental to daily life than present here. *See*, *e.g.*, *United States v. Bunnell*, 2019

8

WL 6114599, at *2 (D. Ariz. Nov. 18, 2019) (denying release of wheelchair-bound defendant with "serious medical issues" including "arthritis, sciatica, bulging lumbar discs 2-5, scoliosis, and degenerative disease causing central stenosis in his spine"); *United States v. Lynn*, 2019 WL 3082202, at *2 (S.D. Ala. July 15, 2019) (no release despite chronic kidney disease, atrial fibrillation, coronary disease, and cervical disc degeneration, among others); *United States v. Clark*, 2019 WL 1052020, at *1, 3 (W.D.N.C. Mar. 5, 2019) (no release of defendant suffering from declining health, diabetes, kidney failure, and back problems requiring a walker); *United States v. Mangarella*, 2020 WL 1291835, at *3 (W.D.N.C. Mar. 16, 2020) (no showing that variety of conditions were causing deterioration in health); *United States v. Maher*, 2020 WL 390884 (D. Me. Jan. 22, 2020).

Lastly, Gross cites the desire to be with his family, most prominently his 72-year-old mother and his children. While understandable, such feelings are undoubtedly shared by every inmate and are neither extraordinary nor compelling circumstances. Nor do the handful of details offered about his family—*e.g.*, vague illness of his mother, school difficulties with children, *etc.*— justify release. *See*, *e.g.*, *United States v. Ingram*, 2020 WL 3183698, at *2 (D. Md. June 15, 2020) (desire to care for aging mother with risk factors is "admirable" but not "extraordinary"); *United States v. Dogan*, 2020 WL 4208532, at *3 (E.D. Cal. July 22, 2020) (challenges of childcare, including during pandemic, are difficult but "neither unusual nor insurmountable."); *United States v. Gaskin*, 2020 WL 7263185, at *4 (E.D. Pa. Dec.

9, 2020) (desire to care for elderly parents does not qualify as extraordinary); *United States v. Henry*, 2020 WL 3791849, at *4 (E.D.N.Y. July 6, 2020).

### B.    The § 3553 factors do not warrant release.

Yet even if Gross's concerns constituted extraordinary and compelling circumstances, that alone is not enough.  The Court must also consider whether Gross is a danger to the community, along with the factors set forth in 18 U.S.C. § 3553(a). As the Government previously explained, (dkt. 1106 at 12–13), those factors weigh strongly against release. The Government incorporates its prior analysis on this score from its first opposition brief.  The Court also agreed that the § 3553(a) factors did not warrant release.   Given the relatively short time since the Court's July 2020 ruling, there is little change to those factors (particularly the ones concerning his history of noncompliance, the severity of his conduct, and the need for deterrence and to protect the public), and the concerns and additional information provided by Gross—including his professions of rehabilitation—in his 2021 submissions do not re-tilt the balance in his favor.

### CONCLUSION

For the foregoing reasons, Gross's motion for release should be denied.[3]

Respectfully submitted,

DANIEL P. BUBAR
Acting United States Attorney

/s/   S. Cagle Juhan,

---

[3]    In the event that the Court determines that Gross should be released, the government requests his release be preceded by a 14-day quarantine to minimize any risk to the public.

Assistant U.S. Attorney
District of Columbia Bar No. 1022935
United States Attorney's Office
255 West Main Street, Room 130
Charlottesville, Virginia 22902
434-293-4283 / cagle.juhan@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on March 29, 2021, I electronically filed the foregoing with

the Clerk of the Court using the CM/ECF system, which will send notification of such

filing to counsel of record.  Paper copies will be mailed to Gross.

s/ S. Cagle Juhan
Assistant United States Attorney